# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Paul Seeman and Lori Seeman, | Case No. 20-CV-1085 (SRN/DTS) |
| Plaintiffs, | |
| v. | **ORDER DISMISSING CASE** |
| Rice County; City of Faribault; Goodhue County; Excel Energy; Troy Dunn; Andy Bolen; Paul LaRoche; Mark Hilady; Blaine Smith; Neal Pederson; Brandon Gliem; Tres Mathews; Collins Voxland; and Does 1-10, | |
| Defendants. | |

Paul Seeman, MCF-Moose Lake, 1000 Lakeshore Drive, Moose Lake, MN 55767; and Lori Seeman, 19486 Eiler Avenue, Faribault, MN 55021, pro se.

Margaret A. Skelton and Timothy A. Sullivan, Ratwik, Roszak & Maloney, P.A., 444 Cedar St., Suite 2100, Saint Paul, MN 55101, for defendants Rice County, Goodhue County, Troy Dunn, Paul LaRoche, Mark Hilady, Blaine Smith, Tres Mathews, Collins Voxland, and Does 1-10.

Ashley Marie Ramstad, Jason J. Kuboushek, and Paul D. Reuvers, Iverson Reuvers, 9321 Ensign Ave. South, Bloomington, MN 55438, for defendants City of Faribault, Andy Bolen, Neal Pederson, and Brandon Gliem.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendants' motions to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. *See* Doc. Nos. 36 & 43. Plaintiffs have failed to respond to the motions despite having been granted a two-month extension of the response deadline. *See* Doc. No. 55. The failure to respond may reasonably be interpreted

1

as a waiver of claims and act as a sufficient basis upon which to grant the motions for dismissal. *See Hernandez-Diaz v. Experian Information Solutions, Inc.*, No. 22-CV-2218 (ECT/DLM), 2023 WL 3585855, at *2 (D. Minn. May 22, 2023); *Cox v. Harpsted*, No. 22-CV-0478 (PJS/DJF), 2022 WL 16541087, at *1 (D. Minn. Oct. 28, 2022). In any event, the Court has reviewed the motions to dismiss and memoranda in support of those motions and concludes that this matter is subject to dismissal under Rule 12. Accordingly, the motions to dismiss are granted for the reasons explained below.

## I.   BACKGROUND

Plaintiff Paul Seeman was the subject of an investigation for motor vehicle theft in 2014. *See* Complaint ¶ 9 [Doc. No. 1]. As part of that investigation, defendant Excel Energy,[1] acting at the behest of defendant Paul LaRoche (a Rice County law-enforcement officer), installed a pole camera outside the property of Paul and Lori Seeman. *Id.* The camera was operated by Rice County law enforcement and captured 42 days of video of events transpiring on the Seemans' property, beginning on March 24, 2014. *Id.*

On May 5, 2014, LaRoche and defendant Blaine Smith (another law-enforcement official) applied for and received a search warrant to conduct a search of the Seemans' property in furtherance of the investigation of Paul Seeman. Complaint ¶ 11. The application for the search warrant was partially supported by observations gleaned from

---

[1] The Complaint almost certainly intended to name Xcel Energy, not "Excel Energy," as a defendant. But because the entity is referred to as Excel Energy in the Complaint, including in the caption of the Complaint, the Court will also refer to the entity by that name.

2

the pole-camera footage, though other evidence (including voluntary statements made by the Seemans' son to investigators) also supported the warrant application. *See State v. Seeman* ("*Seeman I*"), No. A19-2084, 2021 WL 79524, at \*5-6 (Minn. Ct. App. Jan. 11, 2021). The warrant was executed on May 6, 2014, and "many items were seized" during that search. *See* Complaint ¶ 12.

Both before and after this initial search of the Seemans' property, Paul Seeman's cell phone was seized by officials of the Faribault Police Department. *See* Complaint ¶ 10. The phone was subsequently examined by unnamed law-enforcement officials. *Id.*

These three events—the March 24, 2014 installation of the pole camera and subsequent recording of the Seemans' property; the May 5, 2014 search-warrant application and the search and seizures that occurred the following day; and the repeated searches and seizures of Paul Seeman's cell phone around this same period—form the nucleus of the complaint. The Complaint alleges that each of these events amounted to a violation of the Paul and Lori Seeman's constitutional rights. The Complaint also alleges that other, later search warrants were supported by information learned from these events, rendering those applications (and subsequent searches) unlawful as well. *See* Complaint ¶¶ 13-17. The Seemans seek relief pursuant to 42 U.S.C. § 1983 for each of these events. *Id.* ¶¶ 18-22.

## II.   DISCUSSION

### A.  Standard of Review

In reviewing whether a complaint states a claim on which relief may be granted, the Court must accept as true all of the factual allegations in the complaint and draw all

reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### B. Collateral Estoppel

Defendants collectively raise several defenses to the § 1983 claims presented in the Complaint. One of those defenses—collateral estoppel—suffices to eliminate nearly all of the Seemans' claims. Accordingly, the Court will start there.

Paul Seeman was convicted in state court on multiple criminal charges arising out of the evidence gained from the searches at issue in this matter. *See State v. Seeman* ("*Seeman II*"), No. A22-1117, 2023 WL 8178144, at *1-2 (Minn. Ct. App. Nov. 27, 2023). The legality of the searches and seizures described above was thoroughly litigated during Paul Seeman's criminal prosecution. At bottom, the Minnesota courts concluded that Paul Seeman's constitutional rights had not been violated by those searches. *See id.* at *4-5, *9; *Seeman I*, 2021 WL 79524, at *3-6. "When a federal constitutional issue is previously decided in a state criminal proceeding following a full and fair hearing, issue preclusion

4

will therefore bar relitigation of that issue in a § 1983 action." *Simmons v. O'Brien*, 77 F.3d 1093, 1096 (8th Cir. 1996).

Under Minnesota law,

> [t]he application of collateral estoppel is appropriate where: (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Willems v. Commissioner of Public Safety*, 333 N.W.2d 619, 621 (Minn. 1983) (quotations and citations omitted); *see also Simmons*, 77 F.3d at 1096 ("[F]ederal courts must give preclusive effect to state court judgments, and the scope of the preclusive effect is governed by the law of the state from which the prior judgment emerged.").  For the most part, collateral estoppel applies very plainly to the claims raised in the Complaint, and the Court will not belabor the obvious.  Each of the searches and seizures was litigated at length during Paul Seeman's criminal proceedings.  The prosecution has now reached final judgment on the merits.  *See generally Seeman II*, 2023 WL 8178144, at *1-10.  Paul Seeman was a party to the prosecution, of course, and he had a fair opportunity to be heard on each of his argument that the conduct of law-enforcement officials violated his constitutional rights.  This lawsuit represents—with two exceptions, discussed below— nearly as clear an application of the collateral-estoppel doctrine as can be imagined.  A criminal defendant invoked the alleged illegality of police conduct as a basis for attacking the prosecution.  The state courts considered those arguments and rejected them, finding that the defendant's constitutional rights had not been violated.  That issue having been

settled in another forum, the criminal defendant cannot present the claim anew in federal court through a lawsuit under § 1983.

There are, however, two complications worth addressing further.

### 1. Lori Seeman

First, for the collateral-estoppel doctrine to apply, the precluded litigant must be "a party or *in privity* with a party to the prior adjudication." *Willems*, 333 N.W.2d at 621 (emphasis added). Lori Seeman is also a plaintiff to this action but, unlike her husband, she was not a party to the criminal prosecution. The question, then, is whether Lori Seeman can be said to be in privity with Paul Seeman such that the collateral-estoppel doctrine also precludes her from pursuing claims under § 1983.

Privity, under Minnesota law, is a doctrine that recognizes that, in certain circumstances, a person or persons who are not parties to an action may nevertheless be connected to the matter such that any judgment will affect their own legal rights as if they were parties. *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011). "'Privies' to a judgment are those who are so connected with the parties in estate or in blood or in law as to be identified with them in interest, and consequently to be affected with them by the litigation." *Hentschel v. Smith*, 153 N.W.2d 199, 206 (Minn. 1967). "Whether one is in privity with another depends on multiple factors, including fairness to the non-party, whether the non-party had control over the proceedings, whether the prior action affected the non-party's interests, and whether the actual party in the prior action sufficiently represented the interests of the present party." *Schumacher v. Halverson*, 467 F. Supp. 2d 939, 947 (D. Minn. 2006).

6

For purposes of analyzing the collateral-estoppel doctrine, Lori Seeman's claims can be divided into two groups. The first group of claims relates to property in which Lori Seeman and Paul Seeman enjoyed joint interests, including parallel privacy interests. For example, both Lori and Paul Seeman possessed a reasonable interest in privacy on their real estate. To the extent that a search of that property would have infringed the Fourth Amendment, the rights of both Paul and Lori Seeman would have been infringed co-equally. With respect to these claims, the Court has little trouble concluding that Lori Seeman was "in privity" with Paul Seeman for purposes of the criminal prosecution. *See Deli v. Hasselmo*, 542 N.W.2d 649, 657-58 (Minn. Ct. App. 1996) (noting that "two parties who have similar interests in the same realty are in privity" under Minnesota law). Lori Seeman's constitutional rights could not have been violated by the actions of law-enforcement officials if Paul Seeman's constitutional rights were not also violated. Moreover, although Lori Seeman did not have control over the criminal proceedings against her husband, her interests were fairly represented in that proceeding by licensed counsel, who litigated the unlawful-search defense on behalf of Paul Seeman. This group of claims brought by Lori Seeman is no less barred by the collateral-estoppel doctrine than the claims raised by Paul Seeman.

The second group of claims, for purposes of examining whether the collateral-estoppel doctrine applies, involves those claims in which it is unclear whether Lori Seeman had *any* property or privacy interest in the item being searched or seized. For example, much of the Complaint is concerned with putatively unlawful searches and seizures of Paul

Seeman's cell phone.  Lori Seeman likely could not be said to be in privity with Paul Seeman with respect to personal property belonging entirely to Paul Seeman.

By the same token, though, if Lori Seeman did not herself have a property or privacy interest in the items at issue, then she could not have any basis upon which to bring a viable § 1983 claim with respect to the searches or seizures of those items.  *See, e.g.*, *New York v. Class*, 475 U.S. 106, 112 (1986).  Lori Seeman simply cannot have a viable § 1983 claim with respect to items searched or seized that did not belong to her or in which she herself did not have a reasonable expectation of privacy.  Accordingly, even those claims brought by Lori Seeman that are not subject to dismissal pursuant to the collateral-estoppel doctrine are nevertheless subject to dismissal under Rule 12.

## 2.  Pole Camera

Second, the Minnesota Court of Appeals demurred from reaching the question of whether the March 24, 2014 installation of a pole camera nearby the Seemans' property amounted to a Fourth Amendment violation, finding that it was not necessary to decide the issue in finding that Paul Seeman's criminal conviction should be affirmed.  Accordingly, this Court has some difficulty finding that Paul Seeman "was given a full and fair opportunity to be heard" on the issue of whether the installation of the pole camera violated his constitutional rights (or, by extension, the constitutional rights of Lori Seeman).  *Willems*, 333 N.W.2d at 621.  To be sure, Paul Seeman did litigate this issue extensively before the trial court, which concluded twice that the installation and subsequent recordings did not violate the Fourth Amendment.  *See* Affidavit of Timothy Sullivan Ex. D. at 27-28 [Doc. No. 45-1 at 56-57].  But Paul Seeman did not have an unimpeded procedural

opportunity to appeal that finding, as the legality of the installation and use of the pole camera ultimately was not germane to the question of whether Seeman's convictions were lawful. *See Seeman I*, 2021 WL 79524, at *5-6.

Ultimately, however, even if the collateral-estoppel doctrine does not preclude consideration of the Seemans' § 1983 claim regarding the pole camera, another doctrine— qualified immunity—does preclude the claim. "'Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam). "Clearly established law is not defined 'at a high level of generality'; instead '[the Court looks] for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Estate of Nash v. Folsom*, 92 F.4th 746, 758 (8th Cir. 2024) (quoting *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020)).

Defendants invoked qualified immunity in their motion to dismiss, and the Seemans have not responded to that invocation. The Court has not identified any controlling case on point from the time of the alleged conduct or earlier that would identify Defendants' conduct as being plainly unlawful—indeed, as explained above, another court of competent

9

jurisdiction (the state trial court in Paul Seeman's criminal proceedings) concluded, after reasoned analysis, that the installation and use of the pole camera by law-enforcement officials was consistent with the Fourth Amendment. Accordingly, any claims related to the pole camera must be dismissed regardless of whether collateral estoppel bars those claims.

### C. Other Defenses

Alongside collateral estoppel, Defendants have invoked a number of other defenses to the claims raised in the Complaint. The doctrine of collateral estoppel—with the exceptions already discussed above—is sufficient to dispose of the entirety of this action. That said, this Court will also briefly review other grounds upon which the Seemans' claims are subject to dismissal, either in whole or in part.

#### 1.  Rule 4(m)

"If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). This action was filed over four years ago, and yet service of process has not yet been properly effected on defendant Excel Energy. Leaving aside all other defenses, then, defendant Excel Energy would now be subject to dismissal in this matter pursuant to Rule 4(m).

#### 2.  Qualified Immunity

As explained above, the individual defendants have invoked qualified immunity to the claims raised in the Complaint. The Seemans did not respond. None of the actions

described in the Complaint, even if unlawful, appear to have been of the kind that any "reasonable official would have understood that what he is doing" violated the Seemans' constitutional rights. *Mullenix*, 577 U.S. at 11. Indeed, for most of the claims brought in this action, two courts—the trial court presiding over Paul Seeman's criminal proceedings and the Minnesota Court of Appeals—each concluded that the conduct of law-enforcement officials did not amount to a constitutional violation at all. Qualified immunity would therefore protect the individual defendants from suit even if collateral estoppel did not.

### 3.      Municipal and County Liability

The Complaint names Rice County, Goodhue County, and the City of Faribault as defendants to this action. Those county and municipal defendants appear to have been named because those entities employed the officials alleged to have violated the Seemans' constitutional rights. But "neither municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior." *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018). A municipality or county can be found liable under § 1983, but only if it is established that the entity itself violated the law, such as through maintenance of an unlawful official policy or unofficial custom. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978). The Complaint does not identify in non-conclusory terms the existence of any such policy or custom. The claims against Rice County, Goodhue County, and the City of Faribault would all be subject to dismissal on this basis as well.

## III.  CONCLUSION

For all the reasons described above, Defendants' motions to dismiss are granted. Because amendment of the Complaint would be futile,[2] this action will be dismissed with prejudice.

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.  The motion to dismiss of defendants Andy Bolen, City of Faribault, Brandon Gliem, and Neal Pederson. [Doc. No. 36] is **GRANTED**.

2.  The motion to dismiss of defendants Troy Dunn, Goodhue County, Mark Hilady, Paul LaRoche, Tres Mathews, Rice County, Blaine Smith, Collins Voxland, and Does 1-10 [Doc. No. 43] is **GRANTED**.

3.  This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 13, 2024                    /s/ Susan Richard Nelson
                                             SUSAN RICHARD NELSON
                                             United States District Judge

---

[2] The claims raised in the Complaint fit *barely* within the six-year limitations window for claims arising under § 1983.  *See Egerdahl v. Hibbing Community College*, 72 F.3d 615, 617 (8th Cir. 1995).  Any new claims raised today would be precluded by the statute of limitations.